To proceed to our final argument of the day, I have frequently lamented that modern language is littered with many an acronym, and I accept that reality. I just get especially frustrated when I can't pronounce the damn thing, and that seems to be the case with the plaintiff appellant in this matter. So I'll just spell it SBRMCOA, or I will call it COA, versus Bayside Resorts et al. And I'll call upon Mr. Durr. Thank you, Your Honor. I'd like to reserve three minutes. Granted. And may it please the Court, my name is Jim Durr, and you did get it right, Your Honor, it's SBRMCOA. I'm glad I didn't mispronounce it. Somebody else registered the trade name of the association, so they had to go with the initials. Thank you. What I'd like to do today, Your Honor, is focus in on two of the arguments that we made in our brief. The first is the issue of fundamental fairness, the requirements of the rules, and the failure of the district court to allow some limited discovery, especially in light of a Rule 56-F request. Let me start out by saying this fighting against arbitration in this case, it would seem to me that arbitration would be a very quick and much less expensive way to get this whole conflict resolved. And I am often at a loss to understand in cases why there is so much controversy about going to arbitration or not. And all I can say with the benefit of hindsight, Your Honor, is that arbitration was initiated during the six years that this case has been pending since Judge Gomez ruled. And my experience in dealing with the AAA with respect to this issue has been exactly the opposite. I think that we were looking at the cost probably far exceeding what it would have cost had we gone through a regular trial in the district court. Again, that's just a personal observation. Do you think that's peculiar to the locus of the dispute? Because that seems to run counter to what we experienced, at least in Pennsylvania. It's possible that it is, Your Honor. And all I can say is that the issue was discussed with my client and they elected that they did not want to proceed with arbitration, that they wanted to proceed before the district court. We were the ones who initiated the case. I mean, we obviously picked it first and we're not going to rely on the arbitration clause. It's interesting to me that you've begun your argument by suggesting that your client here, I believe your argument is or would be, has been prejudiced by being denied discovery. Absolutely. Am I correct? And that would have been discovery into what was set out in the Yehuda Fishman 56F certification. Is that right? Correct, Your Honor. Certain documents... What was it? What is it specifically that you are looking for? We were looking for the opportunity to depose Mr. Myron Polliner with respect to the allegations that he made in the affidavit that was filed. And we wanted the opportunity to obtain some documents that had been taken by the former board members at the time that they left and were not available to the current board at the time that we were filing the opposition. Did the certification explain adequately why that documentation had not been available or why it had not been possible to obtain it up to that point? Yes, Your Honor. That's Mr. Fishman's affidavit and he said in there that the documents that we needed to respond to it had been taken by the former board members and were not available. And I know, again with the benefit of hindsight, during the six years and some additional litigation between the parties that there were in fact documents that were available that would have been relevant to this and that we have discovered that there were statements made by Mr. Polliner that contradict matters he set out in his affidavit. So the Rule 56-F request was not simply a fishing expedition or an attempt to delay it. It was an attempt to get some documents which, again with the benefit of hindsight, we found were in fact in existence and were highly relevant to the issue that was to be decided by Judge Gomez. But don't those documents go to the merits? It seems to me that your procedural unfairness argument elides with your substantive argument. As I understand your substantive argument, you've conceded that the board took an action here, that Polliner on behalf of the board took an action. But I apprehend your argument to be that the board can do what it wants, but what it can't do is act on behalf of the Condominium Owners Association, which in the event of an amendment to the documents requires a 67 percent vote of the members. Is that your substantive argument? That's the underlying substantive argument. That's correct, Your Honor. Even if we assume that the board did what the other side claims it did. I thought you admitted that the board did it. I found something where you said the board voted to do something. Well, so the board did it. There's no question that the complaint, based on the information that was available to us at the time, indicated that the board had authorized Mr. Polliner to sign it. Mr. Polliner said in his affidavit that he had signed it with board authorization. We've subsequently discovered the fact that Mr. Polliner has gone on the record and denied that he had board authorization or that he had actually executed the consent to assignment. So if there's some question there. Absolutely. Excuse me. When you say had gone on the record, maybe I knew this and had forgotten. How and where? It was at a board meeting on November 1st of 2005, Your Honor, and it was tape recorded and subsequently transcribed. And to answer your question, Judge Hardiman, it goes back to the declaration and the fact that the board lacked the authority and the power to do what it did by entering into those agreements. And that was the second point I... And that's a legal question, right? That's purely a legal question, absolutely. And the district court, Judge Gomez, characterized the declaration and the bylaws as internal operating procedures of the association and kind of ruled that if they violated them, so what? And that is just contrary to basic condominium law, and it's also contrary to Virgin Islands statute. Those are contractual documents, in your view. Well... They're enforceable under the law of contract. They're enforceable under the law of contracts. They were adopted, though, pursuant to statutory mandate. 28 V.I.C. section 910 specifically requires a recording of a declaration, and it also specifically requires in subsection 11 that the declaration contain the means by which the declaration can be amended. Section 904 says that all the members of the association must strictly comply with the declaration and bylaws. So these are... So then the question becomes, is this an amendment to the declaration or not? That's the legal question. That's correct, Your Honor, and... And if it is an amendment, there had to be a 67 percent vote, and that's a question for court, not a question for an arbitrator. Absolutely. And we... At the time we filed the opposition, we did not have it, but again subsequently discovered at a board meeting, minutes of a board meeting, where one of the defendant's attorneys expressed to the board the opinion that it was an amendment to the declaration. Well, that doesn't mean anything. That's our job, right? Absolutely. Absolutely. I mean, you need to look at whether or not changing an obligation of the sponsor to the individual members and converting that to an obligation of the association to an assignee of the sponsor fundamentally changes the way that the condominium operates. And what's your best argument or arguments as to why it, in fact, does so? Let's take the situation where it becomes a common expense, which the obligation of the association under the statute, the Virgin Islands statute, the members of the association share on a pro rata basis based on their percentage interest in the condominium in the expenses. Under the scheme that came up with these agreements, let's say an owner goes on vacation for a month, locks up his unit, goes away, doesn't use any water. If it's a common expense, he still has to pay for the water, his share of the water used by everybody else. So it does fundamentally change because before you would only pay to the sponsor for the water that you yourself used. So it does change the percentage interest of each member in the common expenses. So under the prior agreement, it's an individual obligation to pay as you go, and under the new agreement, it's a communal expense. Correct, and it changes who the obligee is. One was an obligation of the individual owner to the sponsor, and the change then was from a collective obligation from the sponsor to the assignee of the – I'm sorry, from the condo association to the assignee of the sponsor. Do they have a necessity argument? I mean, they had to get water, and they were over a barrel, weren't they? Yes, Your Honor, and that leads into the coercion argument that we pled before. The over a water barrel. The over a water barrel, yes. That leads into the coercion argument, which we addressed in the brief, and I think we've done that adequately, but I think what I've talked about today are the two fundamental issues that have to be decided before you even get to looking at whether or not there was coercion because if there was no power of the board to do what it did, it wouldn't matter whether they were coerced or not. Thank you very much. Thank you, Your Honor. We'll have you back for rebuttal. Mr. Goldman? Good morning. Neil Goldman on behalf of the Applees. Your Honor, I represent all the Applees in this case, and for purposes of this appeal, their interests are congruent. They have other issues with respect to other matters where they're not, but for purposes here, they are. Your Honor, I want to address, and I guess Judge Hardiman, directly to the questions that you were asking Mr. Durr. The issue is not whether there's a legal question as to an amendment to the declaration, and we, of course, submit that the agreement did not work, an amendment to the declaration, and I can explain that. But the issue here is who makes the decision as to whether or not the water supply agreement was, to use the COA's term, ultra vires not permitted by the declaration. We're here on the issue of arbitrability, and the cases, prima paint and buckeye check cashing, the Supreme Court cases are clear. And what they say is, and it's unmistakable, that the arbitration clause is severable from the rest of the agreement. And unless the challenge is to the severable arbitration clause, then the challenges to the agreement go to the arbitrator. That presupposes a valid agreement. No, it really does not, Your Honor. The question is who makes the determination with respect to validity. So you and I enter into a contract for Whiteacre. You want to sell Whiteacre to me. We have a discussion over dinner. I tell you that I'm going to pay you half a million. You say, no, I need $5 million. We agree to disagree. I go home. And then you go back to your office and you draft up a contract for $10 million. You sign your name to it. You forge my name on it. There's an arbitration clause. And then when you sue me for the $10 million I'm supposed to pay you, I can't go into a court of law. I have to go to an arbitrator because there's an arbitration clause. No, that's not our position. Well, then their position, as I understand it, is that this gentleman Polliner, while perhaps he had an opportunity to act on behalf of the board, he did not have an opportunity to enter into a contract that would have effectuated an amendment to the condominium declaration, and only that can be done by a 67% vote. And if they're correct about that premise, then this act was ultra viris, and that has to be decided by a court of law. Your Honor, respectfully, I disagree, and that's not the case law. What needs to happen is the arbitration clause under Buckeye and under Prima jurisprudence needs to be severed from the remainder of the contract. And the question is, was there an agreement to arbitrate? That's decided by the court. In your example, somebody forges your name to a contract to buy Whiteacre, in that case a question of forgery is a question that is presented to the court, a question of authority of an agent to execute a document on behalf of a principal, whether in fact the person was an agent. That is determined by a court. But questions as to the substantive validity of a contract, it's clear that under Prima Paint and under Buckeye that those decisions are made by the arbitrator, and the court only determines whether or not there was an agreement to arbitrate. What did their Sandvik decision say? The Sandvik decision, Your Honor, is ‑‑ It was about the very existence of an agreement, similar to what we have here, was it not? Your Honor, this isn't the question about the very existence of an agreement. The complaint, and it is in, let's see, in the complaint, it's paragraph, I believe, in 22, and again in 41, what they say is the board essentially authorized and executed an agreement for this water supply agreement, and that agreement contained an arbitration clause. The very allegations of the complaint at issue are that there is an agreement and the consent to assignment, that those agreements were in fact made. The question is really two. Once the agreements were signed and delivered, number one is, was it ultra vires? Did it violate, did the substantive provisions violate the declaration? And number two, was the agreement obtained by coercion? What about whether the signer had the authority to sign the document in the first place? If the question is, and again, this is clear under the Buckeye and Prima Paint jurisprudence, the question is whether he had the authority to enter into an agreement to arbitrate. The question is not whether he had the authority to get to the substantive issues. What about whether the signer had the authority to sign the contract? To sign any contract. The contract in which the arbitration clause is embedded. He had the authority to sign a contract to arbitrate. Who decides that? That's in the bylaws. Who decides whether that's true or not? The court or the arbitrator? This court decides whether or not he had the authority to sign an agreement to arbitrate. The district court decides that. That's not decided by the arbitrator. The issue of the validity of an executed agreement, the substantive provisions, those are determined by the arbitrator. So then why doesn't the case need to be remanded for the trial judge to ascertain whether the signer here was authorized to sign the agreement? And that would then necessarily require the district court to examine the subsidiary question of whether or not it effectuated an amendment of the declaration such that there should have been a vote of the members. Two responses, Your Honor. First, the complaint filed in this case says the agreement was approved by the board and signed by Polina. There was an attachment to the motion to dismiss. It's part of the record here. It wasn't objected to. It was a complaint filed in the superior court a couple of months before in which the agreement was attached to a verified complaint, verified by Yehuda Fishman, the same person who signed the affidavit. And that complaint said this agreement was signed by Polina for the board. Right. And the board approved it. Right. So there's no question. There's no question. I'm with you on that. No question. About the board. About the board. Correct. And, again, under the Primate Paint and Buckeye jurisprudence, you sever off the arbitrate, the agreement to arbitrate, and you determine whether or not there was an agreement to arbitrate. The substantive issues as to the validity of the agreement. You've just bypassed, though, the you've satisfied me anyway that the board signed this. Correct. But that begs the question of whether or not it was ineffective because the Condominium Owners Association did not authorize the action, that it was an ultra-variant action. That needs to be decided by the court. And I didn't see my review of the record indicates here that the district court used interchangeably or elided the board with the owners. And they're two very different entities with different duties and responsibilities and rights. Your Honor, I agree with that. The issue, although the question is the issue, is who decides that question. And I have issues with the formulation that the district court used in coming to what is the correct conclusion. But I'm suggesting to the court, and it's clear in our brief and it's clear in Buckeye and in other issues, that the court initially determines whether there was an agreement to arbitrate. Did Polliner under the bylaws have the authority to enter into an agreement to arbitrate? Yes, Your Honor, he did. That's addressed in Judge Gomez's opinion, I think, accurately. It talks about the board having the authority to take care of the business of the association unless the matter is one that essentially can't be delegated to the board. But if you are agreeing to arbitrate a dispute that concerns the ability of the person signing the arbitration, excuse me, if you agree to arbitrate a dispute which concerns the ability of the person signing the contract to sign that sort of contract, does that person have a congruent ability to sign an agreement to arbitrate? The answer, Your Honor, is that those are two separate questions. And under Primate Payne and under Buckeye, and it's absolutely clear, you look first as to the efficacy of the arbitration agreement and substantive matters as to the validity of the agreement are determined by the arbitrator. Was there any further discovery required to determine whether Polliner had the authority to sign an agreement to arbitrate? And that, Your Honor, is a great question, and the answer is no. The bylaws make clear he was the president of the association, and the board voted to approve this. And is the board empowered to effectuate a material change to the condo documents on its own? No, the board is not. Then doesn't someone need to decide whether this water agreement, which changed the obligations of each owner from a pro rata individual pay-as-you-go obligation to a communal obligation, doesn't a court of law need to ascertain whether or not that effectuated an amendment to the Declaration of Condominium? No, Your Honor, because that is the determination for the arbitrator. And, Your Honor, Buckeye addressed this point, and we quote in the brief, and I'd like to cite it here. It's 546 U.S. of 448 and 449. It is true, as the respondents assert, that the prime of paint rule permits a court to enforce an arbitration agreement in a contract that the arbitrator later finds to be void. It is equally true that respondents' approach permits a court to deny effect to an arbitration provision in a contract that the court later finds to be void. Prime of paint resolved this conundrum and resolved it in favor of the separate enforceability of arbitration provisions. We reaffirm today that regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator. And the court said, in a footnote, the issue of the contract's validity is different from the issue of whether any agreement between the obligor and obligue is ever concluded. Our opinion today addresses only the former and does not speak to issues decided in the cases which hold that it is for courts to decide whether the alleged obligor ever signed the contract. And then it says whether the signer lacked authority to commit the alleged principle, and it cites our opinion in Sandvik, which you don't even cite in your brief. Your Honor, if there is a question of the authority of the person to sign an arbitration agreement, that is an issue for the court. We agree with that. But we have here. Well, this says whether the signer lacked authority to commit the alleged principle, not to sign the arbitration agreement. And here the question I'm challenging you with is, to me, it's binary, okay? The board of this association has the power to act. And it says right here that it may, powers and duties necessary for the administration of the affairs of the condominium and may do all such acts and things except those which by law or by the declaration may not be delegated to the board of directors. You agree that that's the power of the board here? That's correct. And one of the things the board can't do is it can't affect a material and substantial amendment to the declaration of condominium without an affirmative vote of 67% of the common interest, correct? Correct. So doesn't someone need to decide whether Myron Polliner's signature on this water supply agreement did that? Because if it did do that, he did not have the authority to commit all of the Your Honor, I agree with a part of that. The part where, and again, I think the Buckeye, primate paint jurisprudence is clear. I just quoted Buckeye to you. So I'm not disagreeing that it's unclear. I think we're just pointing to different parts of the opinion. No, I think we're really talking about the same thing. There was an agreement. He signed an agreement. He was the president of the association. It was an agreement relating to the matters and affairs of the entity. He had the authority to do that and it was approved by the board for him to do that. Did that agreement affect the material and substantial amendment? And that is a question that is precisely a question for the arbitrator to decide and not for the court. Because again, we separate out the arbitration, the contract to arbitrate from the substantive agreement. And we've cited the cases in our brief, Your Honor, about what contracts render void. There are cases, and we've cited them in our brief, that where things are ultra vires, then that's a decision for the arbitrator to make, where there are issues of public policy, unconscionability. Unless those questions go to the arbitration clause itself, then they're determined by the arbitrator. If they go to the arbitration clause, they're determined by the court. And in this case, Your Honor, the correct result has to be that there was authority to enter into an agreement to arbitrate, which is really the sole question of the courts. Was there an agreement to arbitrate? That's under Primate Paint and under Buckeye. That's the sole question for the court, is was there an agreement to arbitrate? Not whether or not there was, whether or not the substantive agreement is valid, whether or not it's void. And we submit, Your Honor, that it's clear. And again, it's not a question here of, the question of capacity that Your Honor is raising goes to the question of capacity and authority to enter into an agreement to arbitrate under Buckeye and Primate Paint. Thank you. We understand your position, Mr. Goldman. Thank you very much. Mr. Durer, rebuttal? Oh, one thing, Mr. Goldman, if I may, by way of clarification, in your brief at page 6, you have indicated that Beachside and Bayside are voluntarily withdrawing their appeal. Now, last check, that had not happened yet. And I spoke to Mr. Durer this morning, and we'll submit. Very good. We'll submit an agreement. Just needed to do a little bit of housekeeping. May I just raise one issue on the discovery question that was? All right. I was actually going to raise that myself, but felt that I wouldn't take the additional time. But if you'd like to, you're free to do so. Quickly. Thank you. Your Honor, in addition to the fact that the discovery was not sought in connection with the arbitration and that the COA stated that the issue should be decided as a matter of law, again, I think the law is clear. The question is, is the authority to arbitrate? And those were issues that were conceded. The questions that need to be determined by the court are raised in the complaint and in the verified complaint that was part of the record where the COA acknowledged it. So there were no additional facts or additional issues that needed to be elicited in order for the court to make a decision compelling arbitration. All right. Thank you very much. Mr. Durer. Just a couple of brief points in rebuttal. Attorney Goldman kept referring to the Buckeye and PrimaPaint line of cases. As you've noted, Judge Hardiman, footnote one, that Justice Scalia's opinion specifically referenced Sandvik and referenced that the issue of capacity or the existence of the contract itself was not specifically not being decided by those cases. The line of cases that provide the authority for the court today are the Parnett-Mills, Sandvik, and Digital Signal case, which all hold that it is a question for the court to determine. Now, with respect to the authority to sign the arbitration agreement, I still don't understand that argument. What it seems that the other side is saying is that Mr. Polliner and the board had the authority to agree to arbitrate a contract that they had no authority to enter into in the first place. The argument just doesn't make any sense. If they didn't have the power to commit the association to the contract itself, they didn't have the power to require arbitration of that. In any event, that is all something that has to be decided by the court in the first instance. Secondly, with respect to the discovery issue, we did request the right to conduct the discovery. We've already talked about what we asked and what we expected to find. What was particularly disturbing to me when I read Judge Gomez's opinion was that he faulted the COA for not having filed affidavits  when we had actually asked for the ability to conduct some limited discovery so that we could file those affidavits. It would seem to me that Judge Gomez was conceding that affidavits containing relevant material was important to the decision because he faulted us for not doing it, but we asked him for the ability to do it. All that we're asking right now is for a remand with the ability to conduct some limited discovery and with hopefully some guidance from this court for Judge Gomez as to the legal effect of condominium declarations and bylaws so that he can again reconsider the issue and make a ruling on whether or not there was an amendment. What light might that discovery show on the legal question of whether or not the action effectuated an amendment to the condo declaration? Well, number one, the water supply agreement says that it is contingent upon the execution of a further agreement between the parties. The further agreement between the parties, supposedly, is the consent to assignment that was signed by Mr. Polliner. Now, I have seen a transcript where Mr. Polliner denies that he ever executed that document and said he was leaving that to the new board to decide. That's number one. So there are other potential problems with the legitimacy of this contract aside from whether it would have required a supermajority vote? Oh, absolutely. The water supply agreement indicates that it was executed in June of 2005. The consent to assignment that has been represented to us as being the further document contemplated there references a separate water supply agreement that was entered into in August of 2005. So part of the discovery is I would like to see that later August agreement. Did it supplement or change the terms of the June 2005 agreement? Does it contain an arbitration clause? The record was just incomplete enough for Judge Gomez to be able to rule as a matter of law. Thank you, Mr. Dern. Thank you, Your Honor. Thank you, Mr. Dern and Mr. Goldman. We'll take this well-argued and difficult matter under advisement and we will ask the clerk to adjourn.